

1  W. GORDON KAUPP, State Bar #226141
   DENNIS CUNNINGHAM, State Bar #112910
2  Law Office of Dennis Cunningham
3  115 ½ Bartlett Street
   San Francisco, CA 94110
4  Tel:    (415) 285-8091
   Fax:    (415) 285-8092
5  gordonk@hotmail.com
   denniscunningham@juno.com
6
7  Attorneys for Plaintiffs

8

9

10

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16  Estate of CHERI LYN HOLT-MOORE and          Case No. C-07-2792 PJH
    DAVID MOORE,
17                                              PLAINTIFFS' OPPOSITION TO
                    Plaintiffs,                 DEFENDANTS' MOTION FOR PARTIAL
18                                              DISMISSAL OF COMPLAINT
19          v.
    CHIEF DAVID DOUGLAS, OFFICER
20  ROCKY HARPHAM, SGT. MICHAEL
    JOHNSON, OFFICER TIM JONES, LT.
21  TONY ZANOTTI, LT. TODD WILCOX,
    SGT. LYNNE SODERBERG, OFFICER          DATE:  October 17, 2007
22  MENGAL, DT. RON HARPHAM, OFFICER       TIME:  9:00 a.m.
23  TERENCE LILES, OFFICER RODRIGO         CTRM: 3, 17th Floor
    SANCHEZ, THE EUREKA POLICE
24  DEPARTMENT, THE CITY OF EUREKA,
    AND VARIOUS DOE DEFENDANTS, 1-x        Honorable Phyllis J. Hamilton
25  inclusive,
26                  Defendants.
27  //
28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, CA

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

1

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................1

II.   FACTS.............................................................................................1

III.  STANDARD OF REVIEW....................................................................4

    A.    The Claims Against Defendants Zanotti, Wilcox, Soderberg, Mengal,
        (Ron) Harpham, Liles, And Sanchez Are Pled With Sufficient
        Specificity.....................................................................................5

    B.    Plaintiff David Moore Is Not Asserting A Claim For Damages For
        The Violation Of Ms. Moore's Constitutional Right Against Wrongful
        Force...........................................................................................7

    C.    Plaintiffs Are Not Seeking Damages For The Pain And Suffering
        Experienced By Ms. Moore Or For David Moore's Grief And Sorrow.....7

    D.    Ms. Moore's Estate May Bring A Bane Act Claim On Her Behalf..........8

        1. The Complaint is sufficiently specific with regards to the defendants
          who caused the violations and the factual actions that constituted
          "threats, intimidation or coercion."..............................................9

        2. The Estate of Ms. Moore brings the Bane Act claim for interference
          with her constitutional rights against unreasonable search and seizure,
          her right to life, and her right to bodily integrity...........................10

        3. David Moore, as decedent's successor in interest is entitled to bring a
          survival action on the decedent's behalf......................................10

        4. The Bane Act does not bar a claim brought by an estate...................11

IV.   CONCLUSION...............................................................................12

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1

**TABLE OF AUTHORITIES**

2    Federal Cases

3    *Alexander v. San Francisco*, 29 F.3d 1355 (9th Cir. 1994)………………………….6

4    *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990)………………........4,5

5    *Carlson v. Greene*, 446 U.S. 14, 100 S.Ct. 1468 (1980)………………………....……11

6    *Conley v. Gibson*, 355 U.S. 41, 47, (1957)………………………………………….5

7    *Ellis v. City of Pittsburgh*, 1996 WL 266126 (N.D. Cal. 1996)…………………..……..4

8    *Francis v. State of Cal.*, 2004 WL 1792627, 2 (N.D.Cal. 2004)………………...……...5

9
10   *Guyton v. Phillips*, 532 F.Supp. 1154, 1164 (N.D.Cal. 1981)……………………….11

11   *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969)………………………………….5

12   *Leer v. Murphy*, 844 F.2d 628, 633-634 (9th Cir. 1988)…………………………….4

13   *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978)……………………………6

14
     *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)……………………………………….4
15
16   *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)……………………………….……11

17   *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987)………………………......4

18   *Robertson v. Wegmann*, 436 U.S. 584, 1991 (1978)……………………………....…11

19   *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002 *en banc*)………………..…4
20
     *Tennessee v. Garner*, 471 U.S. 1 (1985)……………………………………..…...….5,11
21
22   *Trigueros v. Southwest Airlines*, 2007 WL 2502151, 9 (S.D.Cal. 2007)……………....10

23   *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152 (1966)………………………….11

24   *Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997)…….5

25   State Cases

     *Austin B. v. Escondido Union School Dist.* 149 Cal.App.4th 860, 884 (2007)………….....10
26
27   *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4[th] 141, ( 1995 1st Dist.)…..10,11

28   *Boccato v. City of Hermosa Beach* (1994) 35 Cal.Rptr.2d 282……………………………8

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    *Cabesuela v. Browning-Ferris Industries of Cal., Inc.* (1998) 68 Cal.App.4[th] 101..............10

2    *Krouse v. Graham*, 19 Cal.3d 59, 72 (1977)...............................................….........7

3    *Venegas v. County of Los Angeles ("Venegas II")* (2004) 32 Cal.4[th] 820...................8

4

5    <u>Federal Statutes</u>

6    Fourth Amendment to the United States Constitution........................................4,7

7    42 U.S.C. section 1983...........................................................................4

8    <u>State Statutes</u>

9    Article I § 13 of the California Constitution..................................…....8

10   Civil Code section 43...........................................................................8

11   Civil Code 52.1............................................................…..8-11

12   Code of Civil Procedure 377.30...........................................................9-11

13   Code of Civil Procedure 377.20(a)...........................................................11

14   <u>Federal Rules</u>

15   Fed.R.Civ.P. 8(a)(2)...........................................................................5

16   Fed.R.Civ.P. 12(b)(6).......................................................................4

17   <u>Jury Instructions</u>

18   Judicial Council of California Civil Jury Instructions (CACI) 3921, titled "Wrongful Death
(Death of an Adult)...........................................................................7,8

19

20   <u>Law Review Articles</u>

21   Avery, <u>Unreasonable Seizures Of Unreasonable People: Defining The Totality Of Circumstances
Relevant To Assessing The Police Use Of Force Against Emotionally Disturbed People</u>, 34

22   Colum. Human Rights L. Rev. 261 (2003)...............................................2

23

24

25

26

27

28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1

# I.    INTRODUCTION

2    Defendants have brought a Motion for Partial Dismissal of Complaint pursuant to

3    Fed.R.Civ.P. 12(b)(6), alleging (1) that the Complaint fails to state sufficiently "individualized"

4    allegations against certain Defendants and therefore should be dismissed as to them; (2) that

5    David Moore lacks standing to assert a Fourth Amendment claim, which requires dismissal of

6    the Complaint to the extent he is asserting such a claim, (3) that Plaintiffs' claims for damages

7    for pain and suffering of the decedent should be dismissed, and (4) that the Bane Act claim

8    should be dismissed because (i) it fails to identify which Defendants caused harm to the

9    decedent, (ii) the Bane Act is not a wrongful death statute that can be asserted vicariously, (iii)

10   that the Estate or the decedents' personal representative may not bring the claim because it must

11   be prosecuted "in his or her own name and on his or her own behalf," and (iv) that the complaint

12   must be dismissed because there are no allegations in the Complaint establishing that David

13   Moore is a duly appointed representative of an existing estate.

14    Plaintiffs hereby answer and oppose the Defendants' motion.

15

# II.    FACTS

16    On April 14, 2006, at approximately 9:15 a.m., Cheri Lyn Holt-Moore, deeply sorrowing

17   on the one-year anniversary of the death of her son, and because of the chronic mental disorder

18   she suffers from, distraught and in the midst of a psychiatric crisis, called the Humboldt County

19   mental health department, urgently seeking help in obtaining medication which had apparently

20   run out.  During the call she urged the county social worker to call her doctor for the medication,

21   and begged her not to call the police; apparently, in an attempt to underline the urgency of her

22   request, she also said she didn't want to hurt anybody, but still made vague threats including that

23   she would "blow up the building."

24    Ms. Moore had been diagnosed with bi-polar disorder many years before.  She was a long

25   time resident of Eureka and had long experience with the police, who had been called to her

26   home many times and were very familiar with her case and her occasional emotional difficulties.

27   County mental health workers were also quite familiar with Ms. Moore; and had already been in

28   contact with her in her current crisis, on the phone the night before.

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1    After the county social worker hung up with Ms. Moore, and despite her pleas not to

2    involve the police, he called 911 and requested that police do a "welfare check."  Officers

3    arriving at her apartment were met with loud music blaring from open windows; and Ms. Moore

4    leaned out the window and yelled at them to leave her alone, and to leave.  Ignoring well

5    recognized practices, and their explicit training, in handling emotionally disturbed persons[1], the

6    police took a very aggressive approach.  They immediately began pounding on her door and

7    demanding entry.  This further agitated Ms. Moore, who kept yelling at them to leave her alone.

8    Soon after the first officers arrived on scene the SWAT team was also dispatched, and

9    snipers were posted in her plain sight, aiming their rifles at her through the windows.

10    Increasingly frantic, she called the mental health office again, pleading for help; and also

11    contacted a friend, who she told she would come downstairs if he could come to the building and

12    bring her cigarettes.  The friend came, but was barred by the defendants from contacting Ms.

13    Moore.

14    At some point, defendant David Douglas, the chief of police, took command of the scene.

15    He barred county mental health workers from speaking with Ms. Moore, he prevented any

16    contact with Ms. Moore by her friends, and cut short a fifteen-minute break called by his own

17    crisis negotiators, after their telephone conversation with Ms. Moore was cut off, to have the

18    SWAT team storm the apartment.  He agreed to a five minute break, but sent the SWAT team in

19    before the five minutes were up, when one of the snipers reported that Ms. Moore was no longer

20    holding a bright orange marine (nautical) flare gun she had earlier been seen waving around.

21    The official account of the incident states that, as officers stormed into the apartment, Ms.

22    Moore reached for the flare gun, whereupon three officers shot her and she died.  The officers

23    testified they were afraid of death or serious bodily injury, and were compelled to shoot.

24    **    **    **    **

25

26    [1]    "Emotionally disturbed person" is a term of art regarding persons who are emotionally
disturbed and apparently suffering from some form of mental health issue or disorder, whether

27    temporary or permanent. See, Avery, Unreasonable Seizures Of Unreasonable People: Defining
The Totality Of Circumstances Relevant To Assessing The Police Use Of Force Against

28    Emotionally Disturbed People, 34 Colum. Human Rights L. Rev. 261 (2003).

2

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1       From the time police were dispatched until the moment, more than two hours later, when

2  they barged into her apartment and shot her, numerous Eureka officers participated in the faux-

3  emergency police action that led to her death. Plaintiffs are informed and believe that each of the

4  defendants named in the complaint materially caused or helped cause Ms. Moore's death, based

5  on the information we received prior to filing the complaint about their various roles in the

6  activity. Otherwise, we are constrained to wait until discovery can shed more light on the

7  various issues of causation. As argued below, this should not present a problem at this stage. It

8  is too early in litigation – prior to any discovery – to know what each individual officer did.

9       What is known now is that Chief Douglas was in command of the operation, and that he

10  gave the unconscionable orders to prevent mental health workers and friends from contacting

11  Ms. Moore, to scuttle the attempt of his own negotiators to resolve the incident peacefully, and

12  for the SWAT Team to storm the apartment. We know that Officers Rocky Harpham, Michael

13  Johnson, and Tim Jones were the ones who shot the decedent. As to the other named defendants,

14  for whom dismissal is sought, we have the following information:

15       Defendant Lieut. Zanotti was the 'incident commander' who was in overall charge of the

16  officers and their actions until superseded by Chief Douglas; and defendant Wilcox, also a

17  lieutenant, was commander of the SWAT Team. The two senior officers were responsible for

18  the initial police decision to ignore the information they had, which called for calm and

19  compassionate recourse to the mental health protocol, and, instead to set up an "armed and

20  dangerous" standoff, as if desperadoes were barricaded in the building. Defendant Lynne

21  Soderberg, was a sergeant and leader of the negotiating team, who ordered the friend Ms. Moore

22  had asked to help her, who was talking to her on the phone from outside, trying to calm her, to

23  hang up and stay out of it. Defendant Ron Harpham and defendant Mengel were snipers, who

24  trained their carbines on the decedent inside her apartment, when she presented no threat;[2]

25  defendant Rodrigo Sanchez was a SWAT Team member who helped storm the apartment; and

26  defendant Terence Liles was another SWAT Team member, also at the apartment door. In

27  

---

28  [2] Pointing a gun at someone unreasonably can constitute a Fourth Amendment violation. See, *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002 *en banc*).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

1   addition, the Complaint specifies several defendants as John Doe, including the three officers

2   who were first to arrive at the apartment, and, ignoring the mental health protocol, began

3   pounding on the door, demanding entry.  Plaintiffs have subsequently learned that these were

4   Officers <u>Bolton</u>, <u>Quigley</u> and <u>Lawson</u>, with Lawson in charge.

5         Beyond that, it is unclear to Plaintiffs exactly which officer did what; however, it seems

6   quite plain that all the involved officers blatantly disregarded their own training and established

7   protocols for dealing with emotionally disturbed people --- let alone common sense and

8   professional discipline --- and that Ms. Moore was actively terrorized and provoked by

9   defendants, rather than treated with the care and respect that the circumstances clearly called for.

10  Then, finally --- in circumstances mainly of their own creation --- the police felt free to storm her

11  apartment and shoot her dead.

### III.    STANDARD OF REVIEW

13        To sustain an action under 42 U.S.C. § 1983, a plaintiff must show (1) that the conduct

14  complained of was committed by a person acting under color of state law; and (2) that the

15  conduct deprived the plaintiff of a constitutional right.  *Balistreri v. Pacifica Police Dept.*, 901

16  F.2d 696 (9th Cir. 1990) (citing *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987) (citing

17  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).)  "A person deprives another of a constitutional

18  right within the meaning of § 1983 if he does an affirmative act, participates in another's

19  affirmative act or omits to perform an act which he is legally required to do and thereby causes

20  the deprivation of which the plaintiff complains." *Ellis v. City of Pittsburgh*, 1996 WL 266126

21  (N.D. Cal. 1996) (citing *Leer v. Murphy*, 844 F.2d 628, 633-634 (9th Cir. 1988) (internal citations

22  omitted).

23        "A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond

24  doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

25  to relief.  Dismissal can be based on the lack of a cognizable legal theory or the absence of

26  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901

27  F.2d 696 (9th Cir. 1990) (internal citations omitted). "Thus, these liberal pleading rules only

28  require that the averments of the complaint sufficiently establish a basis for judgment against the

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

4

1  defendant." *Yamaguchi v. United States Dept. of Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997)

2  (internal citations omitted).

3      "Because the Federal rules allow liberal opportunity for discovery and other pretrial

4  procedures to develop the grounds of both claims and defenses, such simplified 'notice pleading'

5  is sufficient. Hence, a complaint should not be dismissed unless it is apparent that the plaintiff

6  can prove no set of facts which would entitle her to relief." *Francis v. State of Cal.*, 2004 WL

7  1792627, 2 (N.D.Cal. 2004) citing *Conley*, 355 U.S. at 45-48 and *Jenkins v. McKeithen*, 395 U.S.

8  411, 421-422 (1969).

9      Our system of notice pleading "do[es] not require a claimant to set out in detail the facts

10  upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, (1957). Instead, "all the

11  Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice

12  of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, *supra*, at 47.,

13  quoting F.R.Civ.P. 8(a)(2). See also, *Yamaguchi*, *supra*, 109 F.3d 1475 (9th Cir.1997). Thus,

14  Defendants carry a very heavy burden on their motion.

15

16  **A.  The Claims Against Defendants Zanotti, Wilcox, Soderberg, Mengal, (Ron)**
17     **Harpham, Liles, And Sanchez Are Pled With Sufficient Specificity.**

18      Defendants argue that, without 'individualized' allegations regarding causation, the

19  claims against defendants Zanotti, Wilcox, Soderberg, Mengal, (Ron) Harpham, Liles, and

20  Sanchez must be dismissed. (MTD, 4:2-14.) In fact, Plaintiffs allege that these defendants

21  participated in violations of the decedent's rights, and those of her survivors, under several legal

22  theories: (1) defendants acted unreasonably in the totality of the circumstances, under *Tennessee*

23  *v. Garner*, 471 U.S. 1 (1985) in forcibly entering her apartment without adequate justification

24  and then using deadly force against her; (2) that defendants' abandonment of their training and

25  protocols regarding emotionally disturbed people during the incident, and particularly in the

26  defendant police chief's command role and actions at the scene, reflect an unconstitutional,

27  practice and custom, under the rule of *Monell v. Department of Social Servs.*, 436 U.S. 658

28  (1978), of failing to properly train officers for and carefully supervise police encounters with

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

5

1    emotionally disturbed persons --- and that this practice was the moving force behind the

2    constitutional violations; and (3) that the defendant officers collectively brought the incident

3    about with their heedless actions, to the point where it led to the wrongful use of deadly force,

4    actionable against all of them under the rule of *Alexander v. San Francisco*, 29 F.3d 1355 (9th

5    Cir. 1994)[3]. There is no insufficiency with regard to the legal theories Plaintiffs advance in the

6    complaint.

7        As to the factual allegations of the Defendants listed above, we are informed and believe,

8    that they were all actively involved in the police response at the scene at one point or another,

9    and thus all potentially liable for the violations which occurred. At this stage in litigation, it is

10   too early to tell whether, according to the applicable standard of review, it appears "beyond

11   doubt" that Plaintiffs cannot prove that these Defendants proximately helped cause the death of

12   the decedent. If, through discovery, Plaintiffs learn that any of them were not proximately

13   involved they will be dismissed from the case. Likewise, as to the Doe defendants, when other

14   officers' roles becomes more clear, various other officers may be named in an amended

15   complaint.

16       As another matter, going to whether there is sufficient notice of Plaintiffs claims in the

17   complaint, and whether the Plaintiffs can sufficiently state the extent of the named defendants

18   involvement in causing Ms. Moore's death, Plaintiffs stand ready to amend the complaint to

19   aver the facts stated in Sec. II above.

20

21   **B.    Plaintiff David Moore Is Not Asserting A Claim For Damages For The Violation Of
         Ms. Moore's Constitutional Right Against Wrongful Force.**

22

23       Plaintiff David Moore is not asserting a claim for damages for any harm to him arising

24

25   [3] In *Alexander*, the Ninth Circuit remanded for trial a claim where the Plaintiff argued, that "it
     was unreasonable for the officers to storm the house of a man whom they knew to be a mentally
26   ill, elderly, half-blind recluse who had threatened to shoot anybody who entered." Plaintiff did
     not claim "that once [decedent] pointed his gun at the officers and pulled the trigger, the officers
27   used unreasonable force in shooting to kill. Rather, plaintiff argue[d] that defendants used
     excessive force in creating the situation which caused [decedent] to take the actions he did."
28   *Alexander v. San Francisco*, 29 F.3d 1355, 1366 (9th Cir. 1994).

6

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1  from the violation to Ms. Moore's Fourth Amendment rights.  Rather, Ms. Moore's estate brings

2  that claim, on her behalf.  Again, if this is not clear, plaintiffs are willing and able to amend.

3  **C.    Plaintiffs Are Not Seeking Damages For The Pain And Suffering Experienced By**
   **Ms. Moore Or For David Moore's Grief And Sorrow.**

4

5        Defendants' argue that the Plaintiffs' state law claims for "general damages (pain and

6  suffering)" are precluded by the fact of decedent's death. (MTD, 5:6-16.)  Defendants base their

7  argument on Plaintiffs use of the term "suffered" in paragraph 33 of their complaint, to wit:  that

8  Plaintiffs' "have suffered and are therefore entitled to general and special compensatory damages

9  in an amount to be determined by the trier of fact." (FAC ¶33.)

10       Plaintiffs recognize that damages for the "pain, suffering, or disfigurement" Ms. Moore

11 experienced from the shooting are not available, as a matter of law.  Plaintiffs' further

12 acknowledge that California cases forbid damages for mental and emotional distress, including

13 grief and sorrow of survivors, in a wrongful death action. *Krouse v. Graham*, 19 Cal.3d 59, 72

14 (1977).  Plaintiffs' are seeking only those damages properly available, as set forth in California

15 Civil Jury Instructions (CACI) 3921, titled "Wrongful Death (Death of an Adult)."[4]  Again,

16

17

---

18  [4] Judicial Council Of California Civil Jury Instruction 3921, Wrongful Death (Death of an Adult) (Revised February 2007).

19

20      If you decide that [*name of plaintiff*] has proved [his/her] claim against [*name of defendant*] for the death of [*name of decedent*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the death of [*name of decedent*]. This compensation is called "damages."

21      [*Name of plaintiff*] does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

22      The damages claimed by [*name of plaintiff*] fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

23      [*Name of plaintiff*] claims the following economic damages:
     1 The financial support, if any, that [*name of decedent*] would have contributed to the family during either the life expectancy that [*name of decedent*] had before [his/her] death or the life expectancy of [*name of plaintiff*],

24 whichever is shorter;
     2 The loss of gifts or benefits that [*name of plaintiff*] would have expected to receive from [*name of decedent*];

25      3 Funeral and burial expenses; and
     4 The reasonable value of household services that [*name of decedent*] would have provided.

26      Your award of any future economic damages must be reduced to present cash value.
     [*Name of plaintiff*] also claims the following noneconomic damages:

27      1 The loss of [*name of decedent*]'s love, companionship, comfort, care, assistance, protection, affection, society, moral support; [and]

28      [2 The loss of the enjoyment of sexual relations.]
     [2 The loss of [*name of decedent*]'s training and guidance.]

7

1    plaintiffs will amend if it's necessary, or preferable.

2        **D.    Ms. Moore's Estate May Bring A Bane Act Claim On Her Behalf.**

3        Defendants also argue: (1) That the cause of action lacks the "requisite factual

4    specificity" regarding which defendants violated her rights and that "the complaint contains no

5    factual allegations specifying the 'threats, intimidation, or coercion' that constituted the

6    purported Bane Act 'hate crime.'"[5]  (MTD, 8:10-11.); (2) Because Plaintiffs' list the right

7    "against wrongful death" as one of the rights that were violated, that Plaintiffs are impermissibly

8    asserting a wrongful death claim under the Bane Act (MTD, 8:12-17)[6]; (3) That "the California

9    Code of Civil Procedure specifies that a survival action on behalf of the estate may only be

10   prosecuted 'by the decedent's personal representative or, if none, by the decedent's successor in

11   interest,' and, because "there are no allegations in the complaint establishing that David Moore is

12   a duly appointed representative of an existing estate, * * * *  the complaint fails to establish that

---

14        No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense. [Your award for noneconomic damages should not be reduced to present cash value.]

15        In determining [*name of plaintiff*]'s loss, do not consider:

16        1 [*Name of plaintiff*]'s grief, sorrow, or mental anguish;
          2 [*Name of decedent*]'s pain and suffering; or
          3 The poverty or wealth of [*name of plaintiff*].

17        In deciding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation. According to [*insert

18   source of information*], the average life expectancy of a [*insert number*]-year-old [male/female] is [*insert number*] years, and the average life expectancy of a [*insert number*]-year-old [male/female] is [*insert number*] years. This

19   published information is evidence of how long a person is likely to live but is not conclusive. Some people live longer and others die sooner.

20        [In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will divide the amount [among/between] the plaintiffs.]

21   [5] Although the Bane Act has been described as a "hate crimes" statute it does require a showing

22   of discriminatory animus or intent, nor does it require membership in a protected class. *Venegas

23   v. County of Los Angeles ("Venegas II")* (2004) 32 Cal.4[th] 820, 842-843, overruling *Boccato v. City of Hermosa Beach* (1994) 35 Cal.Rptr.2d 282.

24

25   [6] It is well established that the Bane Act is not a wrongful death statute and that such a claim may not be derivatively asserted by another through the Bane Act.  Plaintiffs' used the in-artful

26   expression the right to be free from wrongful death but Plaintiffs' intended to express that Ms. Moore 's right to life under the Fourteenth Amendment to the United States Constitution and

27   Article I § 13 of the California Constitution were violated.  It should also be noted that Ms. Moore had a right to be free from harm and the right to bodily integrity under Cal. Civil Code §

28   43.

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

8

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1  | any action can be brought on behalf of the decedent." (MTD, 9:2-16 quoting CCP §377.30); and

2  | (4) That a claim under the Bane Act may only be prosecuted by a person "'in his or her own

3  | name and on his or her own behalf'" precluding the estate from bringing the claim. (MTD, 9:24-

4  | 26, quoting the Bane Act.) Defendants claims all fail, as follows:

5  |     **1. The Complaint is sufficiently specific with regards to the defendants who caused**
**the violations and the factual actions that constituted "threats, intimidation or**
6  |     **coercion."**

7  |         The Defendants have already argued that the defendants listed in their Motion (MTD,

8  | Sec. B) are not well pled.  To the extent that Defendants are reasserting that argument here

9  | please see Sec. A above.  As to whether Plaintiffs have sufficiently pled who committed and

10 | what constituted the "threats, intimidation or coercion" under the Bane Act, Plaintiffs' have

11 | already set forth in their complaint that the shooters Rocky Harpham, Michael Johnson, and Tim

12 | Jones fired at Ms. Moore killing her and that Chief Douglas coordinated and directed their

13 | actions.  Plaintiffs can be no more specific than naming those directly responsible for her death.

14 |         Plaintiffs have also pled with specificity the factual allegations that constituted the

15 | "threats, intimidation, or coercion."  Defendants argue that "the complaint contains no factual

16 | allegations specifying the 'threats, intimidation, or coercion'" that constituted the Bane Act

17 | violation. (MTD, 8:10-11.)  Apparently Defendants are suggesting that the violence inflicted

18 | upon Ms. Moore e.g., her death and the force used to kill her, falls outside of the statutory

19 | language that requires threats, intimidation or coercion.  It appears that Defendants wish to read

20 | the use of force out of the definition of coercion but, the Bane Act was clearly intended to

21 | address violent attacks and Defendants cite no law to suggest otherwise.[7]  The Bane Act applies

22 | to those who have been subject to violence or threats of violence. *Bay Area Rapid Transit Dist. v.*

23 | *Superior Court*, 38 Cal.App.4th 141, 145 (1995 1st Dist.); *Cabesuela v. Browning-Ferris*

24 | *Industries of Cal., Inc.* (1998) 68 Cal.App.4th 101, 111 overruled on other grounds; *Austin B. v.*

25 | *Escondido Union School Dist.* 149 Cal.App.4th 860, 884 (2007); and *Trigueros v. Southwest*

26 |

27 | [7] Merriam-Webster's definition of Coerce is "1: to restrain or dominate by force, 2: to compel to
   | an act or choice, 3: to achieve by force or threat. Synonym see force." http://www.m-
28 | w.com/dictionary/coerce

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

1    *Airlines,* 2007 WL 2502151, 9 (S.D.Cal. 2007).

2        Plaintiff's complaint clearly states that the Defendants banged on the decedent's

3    apartment door, loudly demanding entry; surrounded the building with many officers, amid

4    flashing lights, radios and other alarums; pointed sniper rifles at the decedent through the

5    windows of her home when she was no fair threat to anyone; then broke down her door and shot

6    her to death, also when she presented to serious threat.  Plaintiffs can be no more specific than

7    that at this stage of the case.  As mentioned above, it will become more clear through discovery

8    which individuals participated in the planning, directing and carrying out the various police

9    actions that tormented and provoked Ms. Moore, and heedlessly escalating the circumstances

10   that led to her death.

11       **2. The Estate of Ms. Moore brings the Bane Act claim for interference with her**
**constitutional rights against unreasonable search and seizure, her right to life, and**
12   **her right to bodily integrity.**

13   See footnote 6.

14       **3. David Moore, as decedent's successor in interest is entitled to bring a survival**
**action on the decedent's behalf.**
15

16       Defendants' cite the California Code of Civil Procedure which provides that a survival

17   action on behalf of an estate may only be prosecuted "by the decedent's personal representative

18   or, if none, by the decedent's successor in interest." Cal. C.C.P. § 377.30.  Defendants argue that

19   "[t]here are no allegations in the complaint establishing David Moore is a duly appointed

20   representative of an existing estate." (MTD, 9:7-9.)  Defendants ignore the plain fact that

21   plaintiff David Moore is the decedent's only surviving child, and therefore her 'successor in

22   interest', and that the complaint states this, and states that an estate for Ms. Moore is in

23   formation.  See, FAC, ¶9, p.3:16-18.  A Petition for Letters of Administration is pending in the

24   Probate Court in Humboldt County, filed by other counsel.

25       **4. The Bane Act does not bar a claim brought by an estate.**

26       Defendants offer no authority for the proposition that a claim may not lie the under the

27   Bane Act if it is brought by a decedent's estate.  The Bane Act claim brought by the Estate of

28   Ms. Moore is brought to vindicate her personal rights, i.e., her right against excessive force.

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

1    Defendants argue that the Act may not be "vicariously" asserted; Plaintiffs agree.  As *Bay Area*

2    *Rapid Transit* states, "the rational interpretation of the Bane Act, i.e., [is] that it is limited to

3    plaintiffs who <u>themselves</u> have been the subject of violence or threats." *Bay Area Rapid Transit*

4    *Dist. v. Superior Court*, 38 Cal.App.4[th] 141, ( 1995 1st Dist.) (emphasis added).

5        The same principle operates in regard to federal constitutional violations of personal

6    rights. See, e.g, *Rakas v. Illinois*, 439 U.S. 128 (1978) ("Fourth Amendment rights are personal

7    rights which, like some other constitutional rights, <u>may not be vicariously asserted.</u>", 439 U.S. at

8    133-34 (emphasis added.)).  There is abundant precedent, however, for the assertion of personal

9    rights by a decedent through an estate, when the acts complained of resulted in death.  See

10   *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991 (1978); *Tennesse v. Garner*, 471 U.S. 1, 5,

11   105 S.Ct. 1694 (1985); *Carlson v. Greene*, 446 U.S. 14, 100 S.Ct. 1468 (1980); *United States v.*

12   *Price*, 383 U.S. 787, 86 S.Ct. 1152 (1966) and *Guyton v. Phillips*, 532 F.Supp. 1154, 1164

13   (N.D.Cal. 1981).  The Court in *Carlson* explained why the decedent's personal claim should

14   survive: "[W]e hold that only a uniform federal rule of survivorship will suffice to redress the

15   constitutional deprivation here alleged and to protect against repetition of such conduct."

16   *Carlson v. Greene, supra*, at 24. See also, *Robertson v. Wegmann, supra*, at 25.

17       There are no cases found where any court held that an estate may not bring a Bane Act

18   claim.  In *Bay Area Rapid Transit* the defendants had demurred to the causes of action brought

19   by the estate because they were not included in the Tort Claim filed by the plaintiffs and had

20   therefore defaulted on their claim. *Bay Area Rapid Transit Dist, supra* at 143. The *BART* court

21   only discussed the parents' claim and its derivative nature' and did not mention the causes of

22   action brought by the estate, but simply dismissed them pursuant to defendants' demur. *Id.* at

23   145-146.  California Code of Civil Procedure §§ 377.20(a) and 377.30 make clear Ms. Moore's

24   claim under the Bane Act survives her death and may be brought by her personal representative

25   through the estate.

26       Except as otherwise provided by statute, a cause of action for or against a person
         is not lost by reason of the person's death, but survives subject to the applicable
27       limitations period.
         Cal. Code of Civil Procedure § 377.20(a)
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

1

2   A cause of action that survives the death of the person entitled to commence an
    action or proceeding passes to the decedent's successor in interest, subject to
3   Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate
    Code, and an action may be commenced by the decedent's personal representative
4   or, if none, by the decedent's successor in interest.
    Cal. Code of Civil Procedure § 377.30.
5
    Contrary to any clear statutory language or legislative intent to the contrary the Administrator
6
    (who will be the 'successor in interest', David Moore, in any case) may assert claims for
7
    violations of Ms. Moore's personal rights through the Bane Act as her personal representative.
8

9

10                          IV.    CONCLUSION

11        Wherefore, Plaintiffs respectfully request that to the extent this honorable Court finds any

12   deficiency with the pleadings set forth in their First Amended Complaint, they be granted leave

13   to amend.

14

15                                    Respectfully Submitted,

16                                    DENNIS CUNNINGHAM
                                      W. GORDON KAUPP
17

18

19   DATED:  September 26, 2007

20

21                        By:    _/s/ Gordon Kaupp_____
                                  W. GORDON KAUPP
22                                Attorney for Plaintiffs

23

24

25

26

27

28

                                      12