W. GORDON KAUPP, State Bar #226141
DENNIS CUNNINGHAM, State Bar #112910
Law Office of Dennis Cunningham
115 ½ Bartlett Street
San Francisco, CA 94110
Tel:   (415) 285-8091
Fax:  (415) 285-8092
gordonk@hotmail.com
denniscunningham@juno.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| Estate of CHERI LYN HOLT-MOORE and DAVID MOORE,<br><br>Plaintiffs,<br><br>v.<br><br>CHIEF DAVID DOUGLAS, OFFICER ROCKY HARPHAM, SGT. MICHAEL JOHNSON, OFFICER TIM JONES, LT. TONY ZANOTTI, LT. TODD WILCOX, OFFICER MENGAL, DT. RON HARPHAM, OFFICER TERENCE LILES, OFFICER RODRIGO SANCHEZ, THE EUREKA POLICE DEPARTMENT, THE CITY OF EUREKA, AND VARIOUS DOE DEFENDANTS, 1-x inclusive,<br><br>Defendants. | **Case No. C-07-2792 PJH**<br><br>**(CORRECTED) <u>SECOND</u> AMENDED COMPLAINT   FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND OTHER WRONGS**<br><br>**JURY TRIAL DEMANDED** |

//

**I.     INTRODUCTION**

This case arises from the fatal shooting of plaintiffs' decedent, Cheri Lyn Holt-Moore, by members of the Eureka (California) Police Department ("EPD"), who were part of an all-out emergency SWAT-team operation, led by the Chief of the Department, Lieutenants Zanotti and Wilcox, and replete with snipers and flash-bang entry tactics, whereby they dealt with the supposed mortal threat to public safety presented by this grandmother, mental patient, locked inside her own apartment, grieving and apparently distraught on the one-year anniversary of the death of a son, and needing and pleading for her medication, who had managed to get hold of a pistol-like device used for launching signal flares out at sea, and so supposedly presented an intolerable public menace for which the only remedy was a warrantless invasion into her home absent and summary extermination by the police.

In point of fact, the decedent was essentially harmless, and well-known to the police --- and to numerous other public servants implicated in the system-wide, grossly immoral default of common sense and basic humanity which led to her death (and apparently that of at least three other unfortunates in Eureka recently, as well) --- from repeated "calls for service" and other episodes and periods of her discombobulation, illness and need.  She could readily have been brought through the crisis she was experiencing by a minimally reasonable course of humane response, by social workers and police, acting reasonably and according to established protocols, and supposed careful training, for dealing with mentally and emotionally distressed persons.

Instead, the defendant EPD command staff and line officers unreasonably --- and with deliberate, 'obdurate and wanton' indifference to the decedent's fundamental rights, and humanity --- turned the public service response to a middle-aged woman's apparent psychiatric crisis into a military exercise, and took her life in a heedless instant, with an overwhelming, unlawful, warrantless commando invasion, which provoked her to respond and resulted in the lethal use of force against her.  An epitome of unnecessary force.

As part of the Fourth and Fourteenth Amendment claims under Sec. 1983, the plaintiffs allege that, in addition to the actions of the involved officers, the suffering and death in this case

1  were caused in part by an unconstitutional 'policy, custom and practice' on the part of the Police
2  Department of the defendant City of Eureka, whereby there is woefully inadequate
3  comprehension of and training in the requirements of the Fourth Amendment regarding
4  warrantless entries into a home and the use of force; actionable tolerance, indulgence and tacit
5  encouragement, in the chain of command, for precipitous, overbearing and excessive use of
6  force, and particularly lethal force, by EPD officers on patrol and/or responding to calls for
7  service in the community; and also plenty of departmental attention and energy for any needed
8  cover-up, when things go too far wrong.  The existence of such a violence-prone EPD 'custom
9  and practice'--- apparently also shown to strong effect in the time-related shooting deaths of two
10 teen-agers, Chris Burgess and Zachary Cooke, and the death in jail of a housing-deprived  man,
11 Martin Cotton, after an alleged // well-witnessed EPD beating --- could not be more plainly
12 reflected than in the facts of this case.
13    Plaintiffs and counsel have determined that, notwithstanding the plain, related and
14 arguably jointly liable, heedless failings of other public servants involved in the train of events
15 that led to the deprivations, injuries and needless death herein --- notably including, e.g, the
16 social worker(s) who failed to follow up Ms. Holt-Moore's call for help with minimal urgent
17 counseling, and help, and the needed meds; and the cops who (instead) first went to her home
18 and started banging on the door, demanding entry, apparently sending her over the edge --- those
19 who truly, plainly and proximately deprived Cheri Lyn Moore of her rights, to life, and
20 reasonable treatment, and caused her wrongful death, were the officers in the assault team, the
21 snipers supporting them, and the commanders and chain of command who led them, and
22 ordained the attack; with the City, they are the named defendants.
23    The plaintiffs are the decedent's Estate, bringing claims for violation of her civil rights,
24 and her surviving son, who is Administrator of the Estate, and also brings claims for Wrongful
25 Death and Loss of Love, Comfort, Affection and Society. His deceased brother, Lawrence
26 Moore, who left a child, Willow, now aged ten, whose mother as guardian previously withdrew
27 from the case.
28

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

3
(CORRECTED) SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL
RIGHTS AND OTHER WRONGS

## II. JURISDICTION AND VENUE

**1.** This case is brought pursuant to 42 U.S.C. §1983 with pendent state law claims. Jurisdiction is based upon 28 U.S.C. §1331 and §1343. This court has pendent jurisdiction over state law claims under 28 U.S.C. § 1367.

**2.** Venue is proper in this Court under 28 U.S.C. §1391(b) because the defendants reside in the Northern District of California, and the acts complained of occurred in this district.

**3.** As to the pendent claims under state law, plaintiffs filed a timely claim under Cal. Gov't Code § 910, which was denied by the City of Eureka in a letter dated November 27, 2006.

## III. PARTIES

**4.** The plaintiffs' decedent, Cheri Lyn Holt-Moore, was a resident of Eureka, California, who was killed as a result of the unlawful actions of the defendants. The Estate of Cheri Lyn Holt-Moore, by its duly-appointed Administrator, David Moore, decedent's son, brings this action for violation of Ms. Holt-Moore's constitutional and civil rights, seeking compensatory and punitive damages. David Moore, in his own right as the son, brings the action also for the wrongful death of Ms. Moore, pursuant to California Code of Civil Procedure sections 377.10 and 377.11, and Probate Code sections 6401 and 6402, seeking compensatory and punitive damages.

**5.** Defendant David Douglas was the Chief of Police in the City of Eureka, with the lawful authority and responsibility to set policy and rules, and supervise practice, training and discipline in the operations of the E.P.D.

**6.** Defendants Lt. Tony Zanotti and Lt. Todd Wilcox were senior commanders in the EPD, with full supervisory responsibility, present at the scene and fully involved in the operation. Sgt. Michael Johnson, down the chain of command, was squad leader of the assault team.

**7.** Officers Rocky Harpham, Tim Jones, Terrence Liles and Rodrigo Sanchez were the other members of the assault team. Officers (FNU) Mengal and Ron Harpham were snipers, who kept high-powered rifles trained on the decedent through the windows of her home before the assault.

**8.** All the individual defendants named in Pars. 9-11 above were at all times duly authorized employees of the defendant City of Eureka Police Department, acting within the course and scope of their respective duties, and under color of state law.

### IV.   STATEMENT OF FACTS

**9.** On April 14, 2006, decedent Cheri Lyn Holt-Moore, grieving on the first anniversary of the death of her son Larry, began to experience a mental health crisis. She called the Humboldt County Mental Health Department seeking help, apparently making vague threats, asking in particular to get her previously prescribed medication, and urgently requesting that the police not be sent to her home. After her call, the mental health worker called the Eureka Police Department and asked that police be sent, to make a "welfare check".

**10.** EPD officers, not bringing the needed medication or other assistance in any form, arrived at Ms. Moore's residence and began banging on the door, demanding to be let in. This obviously aggravated her emotional and mental state, and she refused. She expressed her strong desire that the police leave and continued to ask for her medication. Thereafter, the department SWAT team was dispatched to her residence.

**11.** Defendants Douglas, Zanotti and Wilcox, the officers at the scene, and the Chief of the Eureka Fire Department, who also came to the scene, all knew that Ms. Moore had a "gun", used at sea for firing signal flares into the air at night. They knew she was a mental health patient, suffering a crisis, and had called the mental health department for help; and that she needed her prescribed medication. At the time she presented no threat to the officers, herself or anyone else which could not have been handled by calm negotiation and without an overt threat of force.

**12.** At no point did the officers inform Ms. Moore that she was under arrest or that they wanted her to vacate her home so that they could arrest her. Nor did any police officer obtain a warrant or attempt to obtain one.

**13.** After some time, a police negotiator contacted Ms. Moore by phone; but she soon hung up. EPD negotiators said a fifteen minute break was needed before another call would be attempted. Chief Douglas and defendants Zanotti, as event commander, and Wilcox, as SWAT

Team commander, designed a plan that ignored the possibility of and opportunity for successful negotiation. They also ignored the negotiators request for a fifteen minute break. Nor did their plan did accommodate the negotiation strategy that was being attempted. The commanders refused to have the police move out of sight, refused to allow a friend of Ms. Moore attempt "to talk her down" (despite knowing that Ms. Moore had contacted a friend and told him that she would come down if he was allowed to bring her cigarettes), refused to allow county mental health workers to even speak with Ms. Moore, let alone bring her her meds, and even refused the department's own negotiators time to speak to her, when no real threat to herself or others existed.

**14.** Before even five minutes passed, let alone the fifteen minutes the negotiators said was needed, and with no further communication from Ms. Moore or any additional threat by her or other danger presented to officers or others, the commanders ordered the SWAT Team officers to attack and make their warrantless invasion into her home. Not only did the police fail to obtain a warrant, or make any attempt to obtain one, but, they invaded her home absent exigent circumstances. In fact, the signal was given <u>after</u> whatever level of exigency existed decreased; the order was given, and they subsequently invaded her home, as soon as Ms. Moore had put down the flare gun.

**15.** On information and belief, the team 'point man' was defendant Rodrigo Sanchez, with a battering ram; defendant Rocky Harpham was armed with a shotgun, defendant Johnson, the sergeant, with an AR-15 assault rifle, and defendant Tim Jones with a "less-lethal" pellet air gun containing a "flash-bang" device; defendant Tim Liles --- the fatal shooter in one of the noted collateral death cases informing the 'policy' allegations herein   --- brought up the rear. The officers broke down the decedent's front door, entered the apartment and --- supposedly when she reached for the flare gun where it lay on a shelf --- immediately shot her dead. Moreover, the unjustified warrantless invasion provoked Ms. Moore's response, which ultimately lead to her death.

**16.** Chief Douglas and defendants Zanotti and Wilcox radically worsened an otherwise only

routinely difficult situation by pretending there was a grave threat when none existed, and needlessly caused the death of a woman who, stricken with a mental health crisis, reached out to the appropriate government agency for help.

**17.** As a proximate result of the foregoing, decedent suffered fear, anguish, distress and despair before her death, and the loss of her life; and she was deprived of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### V.     CAUSES OF ACTION

#### ONE: Unreasonable Seizure and Deprivation of Life
#### Violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983;
#### Against all Defendants

**18.** Based on the conduct alleged above --- the training of sniper rifles on Ms. Holt-Moore while she was inside her home by defendants Mengal and Ron Harpham (See, *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002 *en banc*), the home invasion and unlawful warrantless entry into the apartment by defendants Johnson, Sanchez, Rocky Harpham, Jones and Liles, and the command, direction and supervision by defendants Douglas, Zanotti, Wilcox and Johnson --- plaintiffs are entitled to judgment against the named individual defendants, and each of them, for violation of Ms. Holt-Moore's right to be free from unreasonable seizure, under the Fourth Amendment to the United States Constitution; for depriving her of the privileges and immunities enjoyed by all citizens, and equal protection of the laws --- in that they discriminated against her as a mental patient --- under the Fourteenth Amendment; and for denying her Due Process of Law, with respect to any criminal offense they may pretend to have believed she was guilty of, by using force against her in a way that shocks the conscience of any civilized person, which caused her death.

**19.** In addition, the City of Eureka is jointly liable with the named individual defendants for the said federal constitutional violations, by dint of the above-described 'policy, custom and practice' of blind-eye indulgence and cover-up of wrongful uses of force, and lethal force, by EPD officers, within the meaning of the rules announced by the U.S. Supreme Court in *Monell v.*

*Dept of Social Services* and *Adickes v. Kress.*

**TWO: Violation of Rights
Protected by the Constitution of California, Article One, Secs. 1, 2 & 13
Per the "Bane Act", Secs. 51.7, 52.1 and 52(a) of the California Civil Code
All Defendants.**

**20.** Based on the conduct alleged above, plaintiffs are further entitled to judgment against the individual police defendants, and each of them, for interference with the decedent's rights under the Fourth and Fourteenth Amendments to the United States Constitution, the California Constitution and the laws of this State --- particularly her rights under Secs. 1, 2 and 13 of Article One of the California Constitution, and Secs.43 and 1708 of the California Civil Code --- by threats, intimidation and coercion, per Sec.52.1 of the Civil Code.

**21.** In addition, defendants violated the right of the decedent to be free from violence and the threat of violence based on her status as a mental patient, under Sec. 51.7 of the Civil Code.

**22.** Pursuant to Cal. Civil Code §52, Ms. Holt-Moore's Estate, on her behalf, is entitled to an award of up to three times the actual damages; exemplary damages in an amount to be determined by the Jury; a civil penalty for each violation of her rights; and attorneys' fees to be determined by the Court.

**THREE: Wrongful Death
California Code of Civil Procedure §377.60 and Gov't Code §§ 815.2, 815.6
All Defendants**

**23.** Based on the conduct alleged above, plaintiff David Moore, as the surviving son of Cheri-Lyn Holt-Moore, is entitled to judgment against these defendants, and each of them, for causing the wrongful death of Ms. Moore by mounting a SWAT Team assault operation which they ended by shooting and killing her, after their illegal entry into her home, without justification or excuse.

**24.** Further, the complained-of acts and the resulting wrongful death give rise to a cause action for both plaintiffs against the City of Eureka, under §815.6 of the California Government Code, in that plaintiffs allege the City of Eureka was under a mandatory duty to ensure, through adequate and proper police training, supervision and discipline, that force would not be used

indiscriminately against citizens; and it failed in this duty, resulting in the Wrongful Death of the plaintiff's decedent.

### FOUR: Negligence
### Cal. Common Law, Code of Civil Procedure §377.60 and Gov't Code §§ 815.2, 815.6
### Against all Defendants

**25.** Based on the conduct alleged above, defendants, and each of them, breached their duties to the decedent to exercise reasonable care in the performance of their official duties. These defendants breached their duties to properly respond to a person in the midst of a mental health crisis who posed no serious threat of harm to herself or anyone else; to become aware of and trained in the prevailing practices for dealing with people who have mental health disorders, and/or crises; for provoking an escalation which lead to the shooting by making an illegal warrantless entry into her home without exigent circumstances; and/or by failing to explore other reasonable options available for handling the decedent's mental health crisis at the scene, which thereby proximately and foreseeably caused decedent's death.

**26.** In addition, the City and the Eureka Police Department are each liable to plaintiffs under Gov't Code §§ 815.2 and 815.6 for negligently training and supervising their employees.

### VI.   DAMAGES AND REMEDIES

**27.** As an actual and proximate result of the wrongs complained of, the decedent and plaintiffs have been harmed and are therefore entitled to general and special compensatory damages in an amount to be determined by the trier of fact.

**28.** In addition, the individual defendants (including the Doe defendants) are liable to the plaintiffs for punitive (exemplary) damages for their conduct, in amounts to be determined by the trier of fact.

### VII.   JURY TRIAL DEMAND

**29.** Plaintiffs demand a trial by jury as to each and every count against each and every defendant.

### VIII.   PRAYER FOR RELIEF

**30.** **WHEREFORE,** plaintiffs pray for relief as follows:

1   a. for general and special compensatory damages, in amounts to be determined by the trier of fact;

2   b. for punitive (exemplary) damages against the individual defendants, in amounts to be determined by the trier of fact;

3   c. for three times the actual damages awarded, for each violation which occurred, pursuant to Cal. Civil Code §§51.7, 52.1 and 52(a) and (b);

4   d. for a civil penalty, for each violation pursuant to Cal. Civil Code § 52;

5   e. for reasonable attorney's fees and costs and expenses of litigation, pursuant to 42 U.S.C. § 1988, Cal. Code of Civil Procedure § 1021.5, and Cal. Civil Code § 52(a) and (b); and,

6   f. for such other relief as the Court deems just and proper.

Respectfully Submitted,

DATED: November 19, 2007       DENNIS CUNNINGHAM
                               W. GORDON KAUPP

By:   */s/ Gordon Kaupp*
      W. GORDON KAUPP
      Attorney for Plaintiffs

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, Ca

10

(CORRECTED) SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND OTHER WRONGS